Townsend *v.* Hayt.

New trial granted.

[MONROE GENERAL TERM, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith*, Justices.]

———•●●———

ELIZA E. TOWNSEND *vs.* STEPHEN T. HAYT.

By a judgment in partition, lot No. 2 of the premises partitioned was set off and assigned to the plaintiff by its number, and by metes and bounds, by which it was bounded south by lot No. 3, which was assigned to McB. under whom the defendant claimed. These lots were both designated on a map or allotment of great lot No. 9, known as the third allotment. In such judgment reference was had to this map and allotment, but the judgment did not assume to divide any of the lots, or to change the original lines thereof, the measurements and descriptions therein being simply designed to give the boundaries of the lots according to the original lines of such lots upon the said third allotment. The surveyor, in describing and in running the lines of lot No. 2, made a mistake in respect to the southern boundary, by which he apparently added a strip of land, the whole length of said lot, of about fourteen rods in width, to lot No. 3, and diminished the size of lot No. 2, to that extent.

*Held* 1. That the plaintiff was entitled to the whole of lot No. 2, and had title to it; and that this error of the surveyor did not affect such title.

2. That it was clearly the intention of the commissioners to assign the plaintiff, in the partition, the whole of lot No. 2, as the same was known and designated on the original map of the third allotment of great lot No. 9; and the mistake of the commissioners was a mere misdescription of the

Townsend *v.* Hayt.

boundaries of said lot, and not an assignment of the particular parcel of land independent of its original lines and its true boundary.

3. That although, if possession had been taken of lot No. 3, and it had been fenced, used and occupied up to the erroneous line, and such adverse use had been acquiesced in, or such line recognized as the true line, for the period of twenty years, it would have become the legal, fixed and boundary line of division between lots No. 2 and 3, by force of the statute, yet as the erroneous line ran through wild land, with no clearing, improvement or fence on either side of it, and there was no question of adverse possession, the location of the line as made by the survey had about it none of the elements of a line located by the parties *in pais,* where rights have been acquired upon the assumption that it is the true line.

4. That it was a case of *mutual mistake,* the commissioners being the agents of both parties, and the plaintiff having done nothing to estop her from asserting her right to hold the whole of lot No. 2, to the extent of the true southern boundary.

5. That McB. and the defendant claiming under him, could not hold the strip of land belonging to lot No. 2, it being confessedly not a part of lot No. 3, and they never having been in possession of it, or exercising any rights of possession over it calling upon the plaintiff to assert her rights in respect to the disputed territory.

Accordingly *held* that an action would lie by the plaintiff against the defendant for trespass, in cutting timber upon the disputed territory. ,

THIS is an action of trespass to recover damages for cutting timber on land claimed by the plaintiff, and the question in dispute is in whom is the title to the land where the timber was cut, and this depends on the location of the boundary line between lands of the plaintiff, and lands of the party giving the defendant license to cut the timber, and who for the purposes of the injury may be called the defendant. The south line of the plaintiff's being the north line of the defendant's land. The plaintiff derives title from Sarah Mulhollen through conveyances vesting the title in Samuel Erwin, a devise by his will to his five children, and a partition of the lands among the devisees, whereby that portion adjoining and north of the lands of the defendant, was allotted to the plaintiff. The deeds from the common source of title under which both plaintiff and defendant claimed bore the same date, each referred to a map on the margin of the deed which was

identical on both deeds, and the description referred to a survey made by Samuel Colgrove in 1810, of lot No. 9 in. the partition of the town of Erwin among the heirs of Arthur Erwin, and which lot No. 9 is covered by the map referred to. The plaintiff is the owner of lot No. 2, and the defendant of lot No. 3, in the subdivision among the heirs of Mulhollen.

In the partition made in 1839, 28 years before the commencement of this action, between the devisees of Samuel Erwin, the south line of the land assigned to the plaintiff is located by a visible boundary and monuments, and is the line to which the defendant claims. The record of this partition was produced by the plaintiff as the evidence of her title in severalty to the land in question. The same line is located as the south line of the plaintiff's lands by the map which was made and certified by the commissioners in partition and filed as a part of the proceedings therein. The plaintiff proved that this line was located and made by the commissioners in partition as the south line of the plaintiff's land, but alleged and attempted to prove that it was so located and made by a mistake of the commissioners, or of the surveyor, who was one of them.

The counsel for the defendant requested the court to charge the jury that the line having been located by proceedings and judgment in partition, the plaintiff could not recover damages for timber cut south of that line. And to the refusal of the court so to charge, the defendant's counsel excepted. The counsel for the defendant also requested the court to instruct the jury that the line of the plaintiff's land having been located by the proceedings and judgment in partition, the plaintiff could recover only her proportionate share of the damages for the timber cut thereon in case the jury should find the south line of the land was as claimed by the plaintiff, and to the refusal of the court so to charge, the defendant's counsel excepted.

Townsend *v.* Hayt.

The jury found a verdict for the plaintiff, and the defendant having made a case and exceptions, appealed from the judgment entered thereon.

*Spencer, Thompson & Mills,* for the appellant. 1. The plaintiff having acquiesced in the line located by the proceedings and judgment in partition for twenty-eight years by permitting that location to stand, is concluded by the judgment and by acquiescence under it, from questioning the correctness of it as against the defendant. (*Baldwln* v. *Brown,* 16 *N. Y. Rep.* 359. *Pierson* v. *Mosher,* 30 *Barb.* 81. *Hunt* v. *Johnson,* 19 *N. Y. Rep.* 279.) 1. The record in partition notoriously fixed the location by well known boundaries and visible monuments made and placed for the purpose, and it was an act of acquiescence to permit that judgment to stand without applying to the court to open it and correct the alleged mistake. 2. An acquiescence in a line between lands adjoining, for a period sufficient to bar a title by adverse possession is sufficient to establish such line, though the lands are wild and uncultivated, and unoccupied. (*Hunt* v. *Johnson,* 19 *N. Y. Rep.* 279, 298. *Baldwin* v. *Brown,* 16 *id.* 359.) 3. The plaintiff is precluded upon principles of public policy from setting up a line in opposition to one established by record to which she is a party, and which has been acquiesced in for so long a period. (*Baldwin* v. *Brown,* 16 *N. Y. Rep.* 359, 364. *Pierson* v. *Mosher,* 30 *Barb.* 81, 84.) 4. And the acquiescence in such cases affords ground not merely for an inference of fact to go to the jury, as evidence of an original parol agreement, but for a direct legal inference as to the true boundary line. It is proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary. (*Baldwin* v. *Brown,* 16 *N. Y. Rep.* 359, 363.)

II. The plaintiff makes title through the record in parti-

tion which being evidence for her for that purpose cannot be impeached or contradicted by her. It is equally conclusive upon her in this a collateral action as if the defendant were a party to it. (*Candee* v. *Lord*, 2 *Comst.* 269. *McCarthy* v. *Marsh*, 1 *Seld.* 263. *White* v. *Merritt*, 3 *id.* 352. *Vanderpoel* v. *Van Valkenburg*, 2 *id.* 190. *Skinnion* v. *Kelley*, 18 *N. Y. Rep.* 355. *Whittaker* v. *Merrill*, 28 *Barb.* 526. *Jackson* v. *Hasbrouck*, 3 *John.* 331.) The line in question was fixed and located by the proceedings in partition by certain boundaries and monuments, so that there is no room for any claim that the line to which the proceedings have reference was any other than the one indicated by the marks and monuments made or referred to by the commissioners. The allotment to the plaintiff, in the partition, describes the south line as commencing at a post, running 281 rods, and terminating at a post. The map of the partition indicates the same lines and the same measurements. Sharp, the surveyor and one of the commissioners, swears that he made the line indicated on the map, and that he made the corners. Thompson, the axeman, swears that he knew nothing of a line further south. The actual measurement of the line now claimed by the plaintiff is three hundred and one rods, or twenty rods longer than that given in the record or upon the map. The certificate upon the map filed, shows that the allotment to the plaintiff was made by actual survey as represented on the map.

III. The proceedings and judgment in partition embraced all the lands held by the parties as devisees of Samuel Erwin. (*Certificate of commissioners.*) The parties other than the plaintiff must be held to have accepted the portions allotted to them in severalty, and can claim nothing more. The plaintiff, in like manner, is precluded from claiming any lands other than those alotted to her; but whether precluded by acceptance or not, they are all

Townsend *v.* Hayt.

bound by the judgment in partition. (*Jackson* v. *Hasbrouck*, 3 *John.* 331.) 1. Inasmuch as the proceedings and judgment in partition locate the south line of the plaintiff's land by fixed and determinate boundaries and monuments, the judgment must be regarded as a judicial determination of its location, estopping the parties as between themselves from alleging error or mistake in regard to it. 2. If the parties to the partition are estopped as between themselves, one of them cannot allege error or mistake, as against a stranger, for this would destroy the equality of partition as determined by the judgment. And such is actually the case here. The plaintiff, if her claim prevails, will get, instead of the 258 acres allotted to her, 269 24-100 acres, or more than thirteen acres beyond the quantity which the deeds under which she claims purport to convey. 3. The deed from the sheriff of Steuben county to Thos. J. Magee, and describing the defendant's land as containing 214 acres, is immaterial, so far as the question raised by the exceptions is concerned. This deed calls for the N. E. and N. W. corners of the lot and a straight line between them, and distances must yield to these, when ascertained. So the quantity of land must yield to ascertained boundaries. The question raised by the exceptions is on the plaintiff's, and not on the defendant's title. 4. The remedy of the party alleging a mistake in the location of the line was to apply to the court to open the judgment and correct the mistake.

IV. If the line was located by the proceedings and judgment in partition so as to leave undivided lands on the south of it belonging to the devisees of Samuel Erwin, the plaintiff being a tenant in common of only one fifth, can recover only that proportion of the damages.

*Bradley & Kendall*, for the respondent. I. The court could not assume, or direct the jury to find, that the line marked fourteen rods north of south line of lot 2, was by

the judgment in partition, located as the south line of the
land thereby allotted to the plaintiff. 1. The judgment
in partition awards to her both lots, one and two, and the
south line of the latter is the south line of the land thus
allotted to her by that judgment. 2. The description of
the parcel, comprised of lots one and two, as given in the
judgment, without regard to the numbers of the lots,
makes the south line of lot 2 the south line of his land
thus awarded. (*a.*) The location of the south line and
southeast corner of the Matthew McHenry lot, lying north
of lot one, was established by the evidence. And by the
judgment in partition, it appears that the east line of the
land thereby awarded to the plaintiff, is 112 rods in length,
extending south from the southeast corner of the McHenry
lot. That line is the east line of these lots one and two,
and necessarily extends to the southeast corner of lot two.
The judgment in partition also bounds the parcel allotted
to the plaintiff, on the north by the McHenry lot. The
latter is the northern boundary of lot one, the line the
same bearing. To insist that the south line of the land
thus allotted to the plaintiff is farther north than the south
line of lot two, is to contradict the judgment. (*b.*) Nor
does the fact that Mr. Tharp, one of the commissioners,
marked the line fourteen rods north of the south line of
lot 2, make that the line of the land allotted to the plain-
tiff. He did not, nor did the commissioners assume to
locate the line. That was fixed before. His effort was to
ascertain its location, and in that he was in error. This
parcel had a distinct location and boundaries, and they
are given. They did not attempt to divide, but awarded
it to the plaintiff entire. (*c.*) And Mr. Tharp explains
and gives the reason why he failed to find the line of the
parcel thus allotted. He knew the southeast corner of the
parcel was the southeast corner of lot 2, and was 112
rods south from the southeast corner of the McHenry lot.
He erroneously supposing that the hemlock at the creek

(which was the northeast corner of lot 6, in the range of lots on the east,) was the northeast corner of the McHenry lot, and the northeast corner of lot 1, ran from that the requisite distance, 112 rods. But it turned out that such point at the creek was fourteen rods north of the proper corner, and included land with which the commissioners had nothing to do; while the true corner, which Tharp failed to find, was a large hemlock on the hill, fourteen rods south from that at the creek. (*d.*) The map drawn by Tharp was the product of this error. This map contradicted the judgment, if it is treated as making the hemlock at the creek a corner. The judgment makes the southeast corner of the McHenry lot the corner. The map makes the length of the east line correct. But on the assumption that it runs from the corner at the creek, it includes fourteen rods in width of the McHenry lot, while the judgment bounds the parcel in question by the south line of the McHenry lot. (*e.*) The judgment must control, and if necessary or desirable, the lines described in the map will be treated as the lines described in the judgment, although not correctly drawn in reference to adjacent lands, to which the judgment in no manner relates. The map will be deemed simply one of the lands which were the subject of the proceedings in partition, of which the McHenry lot and the lands in the range were not a part. (*f.*) The south line of lot 2 was the south line of the land allotted to the plaintiff as located by the commissioners. The marking, by Tharp, another line was not an act of location, but was the mere result of his failure to find the south line. It was no mistake in making location of the line, but an error in marking and representing it, growing out of a mistake as to the place of location.

II. But if it be assumed that the north one of the two lines was located by the judgment in partition as the south line of the land awarded to the plaintiff so as to leave the strip fourteen rods in width between the two lines undi-

vided between the plaintiff and her co-tenants in common, the defendant's exceptions would not be effectual. 1. The plaintiff in that case would certainly be entitled to recover her portion of the damage. That disposes of the first exception. (*Zabriskie* v. *Smith*, 3 *Kern.* 336. *Abbe* v. *Clark*, 31 *Barb.* 238. *Van Deusen* v. *Young*, 29 *id.* 9.) 2. And that portion it seems would in such case be seven-twentieths, which disposes of the second exception as that request assumed one-fifth. · 3. And if the evidence had established the facts assumed in the second request, so as to give force to the exception, the effect would only be to reduce the recovery had, to correspond with the interest of the plaintiff, as no such defense is alleged in answer. (*Code*, § 148. *See cases above cited.*) Such an assumption of location of line cannot, however, be supported.

III. The evidence presented merely questions of fact for the purpose of the disposition of the whole case, and they were fully submitted without any exception, and the defendant made no request for the submission of any question for the jury. 1. The question, as submitted, was for the jury to find the location of the south line of lot two, or between that and lot three. And whether the plaintiff had established her title to that line. This presented the whole case. The court assumed, as the evidence established, that lots one and two were allotted to the plaintiff. 2. The question arising upon the evidence whether the north one of the two lines was made as the south line of the land allotted to the plaintiff, or was the result of a mistake as to its location, and did not represent the south line as located, was also submitted to the jury. Thus the jury was called upon to determine whether the south line was actually located where one was marked by Tharp, or whether that line was thus marked by mistake and falsely represented the location of the south line. 3. The defendant cannot now insist that the question in reference to the marking, and location of the line should have been differ-

Townsend *v.* Hayt.

ently or more specifically submitted as he made no request to that effect.

IV. The defendant did not, nor did those under whom he acted, have, or claim to have, any right to go upon any part of lot two. Their rights were confined to the lot adjoining on the south, known as lot three. And they acquired no rights on the assumption that the north one of the lines referred to, was the true line of lot three. They knew that the plaintiff claimed otherwise when they committed the trespass.

*By the Court,* E. DARWIN SMITH, J. The plaintiff being the owner of lot No. 2, and the defendant of lot No. 3, under the same title and allotment, the only question in dispute between them is simply in respect to the division line between the two lots. This question was litigated at the trial as one of fact, and the jury by their verdict have settled it in favor of the plaintiff, and affirmed her claim in respect to the true southern line of lot number two. The case having been properly submitted to the jury, and there being no exception to the charge, to disturb their verdict upon the evidence, the only question necessary for our consideration is upon the exception to the refusal of the judge to charge as requested. The counsel for the defendant requested the judge to charge the jury that the commissioners in partition having, at the time of making the partition, actually surveyed and marked the northerly line of these two lines in question, by the proceedings and judgment given in evidence in the partition between the plaintiff and others, the line in question was located as claimed by the defendant, and the plaintiff could not recover for any timber cut on the south side of that line. The defendant's exception upon the refusal of the judge to charge as requested presents the first and chief point for our consideration. This exception, I think, is not well taken. In the judgment in partition, lot No. 2 was set off and assigned to the plaintiff

by its number and metes and bounds, by which it was bounded south by lot No. 3. These lots were both known and designated on a map or allotment of great lot No. 9, known as the third allotment. In the judgment in partition reference was had to this map and allotment. The judgment in partition did not assume to divide any of these lots, or to change the original lines of the lots, or any or either of them. It simply assigned and set off lot two to the plaintiff and then proceeded to give the boundaries of such lots by metes and bounds. The measurements and descriptions in the judgment were simply designed to give the boundaries of these lots according to the original lines of said lots upon the said third allotment. The proofs show that the surveyor, in describing and in running the lines of lot No. 2, made a mistake in respect to the southern boundary of said lot, by which he apparently added a strip of land the whole length of said lot, of about fourteen rods in width, to lot No. 3, and diminished the size of lot No. 2 to that extent. The proof clearly shows that this was a mistake of the surveyor in running out said lot No. 2, and the jury have so found. But this survey and mistake does not affect the actual rights of the parties. The plaintiff was entitled to the whole of lot No. 2. She has title to it, unquestionably, and this error of the surveyor does not affect that title. It was clearly the intention of the commissioners to assign her, in the partition, the whole of said lot No. 2, as the same was known and designated on the original map of the third allotment of said great lot No. 9. The mistake of the commissioners is a mere misdescription of the bounds of said lot, and not an assignment of the particular parcel of land independent of its original lines and its true boundary. It is doubtless true, however, if possession had been taken of lot No. 3 and it had been fenced, used and occupied up to the erroneous line, and such adverse use had been acquiesced in, or such line recognized as the true line, for the period

Townsend *v.* Hayt.

of twenty years, it would have become the legal, fixed and boundary line of division between lots two and three by force of the statute. (*Baldwin* v. *Brown,* 16 *N. Y. Rep.* 362.) But the erroneous line ran through wild land. There was no clearing, improvement or fence on either side of it, and no question of adverse possession is in the case; and the location, if it can be so called, of said line as made by the said survey has about it none of the elements of a line located by the parties, *in pais,* where rights have been acquired upon the assumption that it is the true line, till the cutting of the timber which constituted the trespass for which this action was brought. It was a case of mutual mistake, for the commissioners were the agents of both parties, and the plaintiff has done nothing to estop her from asserting her rights to hold the whole of lot No. 2 to the extent of its true southern boundary. I do not see any ground or pretense upon which McBurney, or those claiming under him, can hold the strip of land belonging to lot No. 2, from which such timber was cut, by the defendant. It is confessedly not a part of lot No. 3. He has never been in possession of it, or exercised any rights of possession or control over it, calling upon the plaintiff to assert her rights in respect to the disputed territory, before the cutting of the timber in question.

The motion for a new trial should therefore be denied, and judgment affirmed.

Judgment affirmed.

[Monroe General Term, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]